(No. 22746.—

JESSE WERNER, Appellant, *vs.* JOHN C. MARTIN, State Treasurer, *et al.* Appellees.

*Opinion filed December 20, 1934—Rehearing denied Feb. 12, 1935.*

214

Winston, Strawn & Shaw, (Walter A. Wade, James H. Cartwright, and Paul H. Moore, of counsel,) for appellant.

Otto Kerner, Attorney General, (Montgomery S. Winning, of counsel,) for appellees.

Mr. Chief Justice Jones delivered the opinion of the court:

Appellant, a citizen and tax-payer of the State of Illinois, filed a bill in the circuit court of Sangamon county to restrain and enjoin the disbursement of certain public moneys from the motor fuel tax fund. The defendants are the following State officials: John C. Martin, Treasurer, Edward J. Barrett, Auditor of Public Accounts, and K. L. Ames, Jr., Director of the Department of Finance.

A motion was filed by them to dismiss the bill for want of equity. A hearing was had, the court granted the motion and the bill was dismissed. This appeal follows.

The bill alleges that the Motor Fuel Tax law, as amended in 1933, provides that prior to January 1, 1934, as moneys are deposited in the motor fuel tax fund, a sufficient amount thereof shall be reserved to pay the costs of administering the act and to pay the refunds provided for. The balance shall be apportioned in the following manner: Two-thirds to the Department of Public Works and Buildings and one-third to the several counties of the State. After January 1, 1934, as moneys are deposited in the motor fuel tax fund, a sufficient amount shall be reserved for costs of administration and refunds, and the balance shall be apportioned, one-third to the Department of Public Works and Buildings, one-third to the several municipalities of the State, and one-third to the several counties of the State. The bill further alleges that at the regular session of the General Assembly appropriations were duly made out of the motor fuel tax fund to the Department of Public Works and Buildings in the amount of $49,000,000 and to the Department of Finance of $38,280,000; that thereafter, at the third special session of the Fifty-eighth General Assembly, which convened on the 13th day of February, 1934, a series of four bills were passed and approved. These bills are known as Senate Bills 70, 71, 72 and 73, and their effect is to divert moneys in the motor fuel tax fund from road purposes to school purposes.

It is insisted that the attempted diversion is illegal and void because (1) Senate Bill 70, called the key bill of the series, is an appropriation bill, which increased the aggregate amount of appropriations made at the regular session of the General Assembly and was not approved by two-thirds of the members elected to each house of the General Assembly, as required by section 18 of article 4 of the constitution; (2) the aggregate appropriations made by said

bills, together with the appropriations made in 1933 for road purposes, far exceed the income of the motor fuel tax fund, and the General Assembly thereby failed to provide necessary revenues to meet said appropriations, as is required by section 18 of article 4 of the constitution; (3) said senate bills invest legislative power in the defendants to determine whether the motor fuel tax fund shall be used for road purposes or for school purposes; and (4) they violate section 13 of article 4 of the constitution, as they attempt to amend existing law by reference.

Counsel for the respective parties disagree as to whether Senate Bill 70 is an appropriation bill. It is the contention of appellant that it is, and of the appellees that it is not, an appropriation bill. It is conceded by both parties that Senate Bills 71 and 72 are appropriation bills, and there is some difference of opinion on this question as to Senate Bill 73. The vital difference on this subject relates to Senate Bill 70, which received less than two-thirds of the votes of all of the members elected to the General Assembly. It is claimed that it increases the aggregate amount of the provisions made for appropriations necessary for the ordinary and contingent expenses of the State government by the Fifty-eighth General Assembly, and therefore, under section 18 of article 4 of the constitution, a two-thirds vote of both houses was necessary. The other bills received at least two-thirds of the votes of each house.

Senate Bill 70 purports to amend sections 8 and 10½ of the Motor Fuel Tax law. (Laws of 1933-34, Third Special Sess. p. 227.) Section 8 as so amended provides that "prior to March 1, 1935, from the moneys deposited in the motor fuel tax fund as soon as may be after the first day of each month, a sufficient amount shall be reserved to pay the cost of administering this act and to pay the refunds provided for in section 13 and of the balance one-third shall be apportioned and paid into the common school fund, two-ninths shall be apportioned to the De-

partment of Public Works and Buildings, two-ninths shall be apportioned to the several counties of the State and two-ninths shall be apportioned to the several municipalities of the State. * * * The money apportioned and paid into the common school fund shall be distributed and expended in accordance with the provisions of 'An act to establish and maintain a system of free schools,' approved June 12, 1909, as amended." The amended section also provides for a monthly apportionment to each municipality and to each county of their respective shares of the fund. It makes no appropriation of funds, unless the provision that the money paid into the common school fund shall be distributed and expended in accordance with the provisions of the general School law constitutes an appropriation. The remaining part of the section merely makes an apportionment of the fund and not an appropriation. No authority is granted to pay any money out of the State treasury.

The General Assembly determined that instead of setting apart one-third of the motor fuel tax fund for road purposes that portion should be set apart for schools and placed in the common school fund. We said in *Reif* v. *Barrett,* 355 Ill. 104, that "the creation of separate and distinct funds in the State treasury is regulated by the statute. Except for funds pledged to the retirement of bonds and interest the funds are subject to the legislative will. The funds may be changed, or even abolished, and the funds therein transferred to other accounts or funds." Section 17 of article 4 of the constitution provides that no money shall be drawn from the treasury except in pursuance of an appropriation made by law and upon the presentation of a warrant issued by the Auditor thereon. No money shall be diverted from any appropriation made for any purpose or taken from any fund either by joint or separate resolution. The transfer in this case was not made by resolution, either joint or separate, but was made by

an act of the General Assembly passed by a majority of the members elected to both houses.

The contention that Senate Bill 70 is an appropriation act because it directs the money allotted to be spent under the provisions of the School law was in substance before this court in *Michaels* v. *Barrett,* 355 Ill. 175. It was there contended that "An act to provide for an issue of bonds of the State of Illinois for the relief of indigent persons and for the redemption of notes issued in anticipation of taxes levied for that purpose," and also an act to amend section 9 of the Motor Fuel Tax law, were appropriation measures. Each act provided for an apportionment of moneys out of the motor fuel tax fund and each contained a provision declaring the general purpose for which the money should be spent. Each act omitted the definiteness as to the specific objects and purposes and the several amounts and distinct items and sections required by section 16 of article 5 of the constitution. We held that no appropriation was made by either of those acts; that it took the subsequent act of July 5, 1933, to actually appropriate the money out of the treasury, and that said act was necessary in order to specify the objects and purposes for which the appropriations were made and set apart and the several amounts and distinct items, as required by the constitution.

The provisions contained in Senate Bill 70 were not intended to, and did not, satisfy the requirements of the constitution concerning appropriation bills. The votes the bill received in the respective houses of the General Assembly were sufficient for its enactment.

The second point argued by appellant is that the aggregate appropriations made by the acts of July 6 and July 8, 1933, together with Senate Bills 70, 71, 72 and 73, far exceed the income of the motor fuel tax fund. This contention is made upon the theory that the constitution requires that each General Assembly shall provide funds for each and every appropriation made to cover the ordinary

and contingent expenses of the government. That position is not supported by the plain language of section 18 of article 4. The provision is that "each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government, until the expiration of the first fiscal quarter after the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two-thirds of the members elected to each house, nor exceed the amount of revenue authorized by law to be raised in such time." The command is that the General Assembly shall provide funds to meet the aggregate of all appropriations made by the General Assembly, and the inhibition is against increasing that aggregate except by a vote of two-thirds of the members elected to each house. It does not appear from the allegations of the bill or otherwise that the Fifty-eighth General Assembly did not amply provide for all appropriations made by the measures under consideration, which were in addition to those made at the regular session or in lieu of some of them.

The defendants are not vested with any power to determine whether the motor fuel tax fund shall be used for road purposes or for school purposes. Senate Bill 70 transferred a certain portion of the motor fuel tax fund to the common school fund. No appropriation of that fund out of the treasury was made by that bill, but by Senate Bill 72 (Laws of 1933-34, p. 111,) there was appropriated the sum of $2,800,000 out of the common school fund to the Auditor of Public Accounts for apportionment and distribution according to certain provisions of the general School law. By section 2 there was also appropriated to the Auditor of Public Accounts from the common school fund $7,200,000 for apportionment and distribution according to other provisions of the general School law. Supplementing the Appropriation act, known as Senate Bill 72, the General Assembly passed Senate Bill 73, which par-

ticularizes the objects and purposes for which the money may be spent, together with the amounts thereof. It provides that twenty-eight per cent of the funds derived from motor fuel tax money shall be distributed among the several high schools of the State at the rate of $9 per pupil, and seventy-two per cent thereof shall be distributed among the several grade schools of the State at the rate of $7.50 per pupil. The Auditor of Public Accounts is expressly authorized by this act to draw warrants for said amounts.

Senate Bill 71 makes specific provisions for the appropriation of that part of the motor fuel tax fund which is apportioned to the various municipalities and counties under the amended section 10½. The several bills, when considered together, disclose a full compliance with section 16 of article 5 of the constitution.

The fourth point raised by appellant is, that the series of bills attempt to amend existing law by reference, contrary to section 13 of article 4 of the constitution. We do not concur in this view of the legislation. Senate Bill 70 purports to amend sections 8 and 10½ of the Motor Fuel Tax law and inserts at length each amended section in the new act. Senate Bill 71 purports to amend section 3 of the Biennial Appropriation act of the Department of Finance, and that amended section is inserted at length in the new act. The defendants cannot be confused by this legislation, as they would not be compelled to refer to any other act and would have no difficulty in determining from the context of the amendatory acts what their duties are with respect to the allotments of money to the several funds and the appropriations therefrom.

The decree of the circuit court dismissing the bill for want of equity accords with our view and is therefore affirmed.

*Decree affirmed.*